265 P.2d 626

### SALT LAKE CITY
### v.
### McFARLAND et ux.

No. 7870.

Supreme Court of Utah.

Jan. 14, 1954.

McKay, Burton, McMillan & Richards, Salt Lake City, for appellants.

E. R. Christensen, City Atty., Homer Holmgren, A. Pratt Kesler, Salt Lake City, for respondent.

WOLFE, Chief Justice.

Action by the respondent, Salt Lake City, hereinafter referred to as the City, to recover the sum of $184.31 for culinary water which it furnished and delivered through its pipeline to the appellants at their home in Salt Lake County, outside the corporate limits of Salt Lake City. From a judgment in favor of the City this appeal is brought by the appellants contending that the City did not credit them with all the "free" water to which they were entitled under an exchange agreement entered into between the City and certain stockholders in the Green Ditch Water Company in 1920. Appellants are the owners of one share of stock in that company.

On March 22, 1915, certain water users on the Green Ditch, a lateral of the Big Cottonwood Creek, organized and incorporated under the name of Green Ditch Water Company, hereinafter referred to as the Company. The articles of incorporation provided that each share of stock represented a water right equal to 1/2280th of the water decreed to the Green Ditch on April 13, 1914, by the District Court of Salt Lake County in the case of Progress Co. v. Salt Lake City, No. 8921, affirmed by this court at 53 Utah 556, 173 P. 705. That decree is commonly referred to as the "Morse Decree." Five years later, in 1920, most of the stockholders in the Company entered into an exchange agreement with the City whereby they transferred and conveyed all their "rights, title and interest in and to the perpetual use of the waters of the Green Ditch" to which each respectively was entitled, reserving, however, an ownership in and the right to the constant use of 900 gallons per day from April 1st to October 1st, and 500 gallons per day from October 1st to April 1st for each acre of land under the Green Ditch owned by them. The City agreed to distribute and deliver the water so reserved free of all charge to these stockholders, their successors or assigns through water mains to be laid and maintained by the City. The stockholders signing the agreement were given the right to use through their connection with the City's water main any amount of water in addition to the water so reserved but for such additional water they agreed to pay the City at the regular Salt Lake City rates. In addition, the City agreed to furnish and deliver to these stockholders designated amounts of water suitable for irrigation purposes. The agreement provided that it should be binding upon the parties thereto, their successors and assigns.

The appellants are the owners of 2.88 acres of land under the Green Ditch which were owned by Franklin D. Brinton in 1920. Brinton was a signatory to the exchange agreement with the City. The lower court found, and there is evidence to sustain that finding, that the one share of stock which the appellants now own was owned in 1920 by one of the signers of the exchange agreement. In 1947 appellants applied for and obtained a connection to the City's water main. The secretary of the Green Ditch Water Company advised the City that the appellants were the owners of one share of stock and the City allowed them without charge 900 gallons of water per day from April 1st to October 1st and 500 gallons per day from October 1st to April 1st. For water used by them in excess of those quantities, the City brought this action to recover at the regular Salt Lake City rates.

The appellants first contend that under the exchange agreement with the City they were entitled to the free use of either 900 or 500 gallons of water per day for each acre of land which they owned under the Green Ditch, and that the lower court erred in allowing them only 900 or 500 gallons per day for each share of stock which they owned in the Company. As heretofore stated, they own 2.88 acres of land under the Green Ditch but only one share of stock in the Company. Their contention is based upon the following wording of the exchange agreement:

"Each of the parties hereto reserves an ownership in and the right to the constant and perpetual use, during the Winter season of each year, to-wit, from October 1st to April 1st following, of water, in said Green Ditch equivalent to and upon the basis of five hundred gallons per day *for each acre of land owned by any such party under the Green Ditch;* and during the Summer months of each year, to-wit, from April 1st to October 1st following, of water equivalent to and upon the basis of nine hundred gallons per day *for each acre of land owned by any such party under the Green Ditch.*" (Italics added.)

The exact acreage under the Green Ditch owned by each party to the agreement was set out therein and totalled 573 acres. The combined stock ownership of the parties totalled 573 shares, each share being an "acre-share."

▮ Appellants' contention must fail. While the exchange agreement provided for a reservation of "ownership in and the right to the constant use" of 900 or 500 gallons of water per day for each acre of land owned by the stockholders signing the agreement, there is nothing therein which requires that the water right so reserved should be forever attached to the land then owned by those stockholders. It has long been the law in this state that water rights, even though appurtenant to certain land may be separately conveyed from that land. R.S.U.1898, § 1281; Comp.Laws Utah 1907, § 1288X32; Comp.Laws Utah 1917, § 3477; R.S.U.1933, § 100–1–11; Utah Code Anno.

1943, § 100–1–11; Utah Code Anno.1953, § 73–1–11. Before entering into the agreement, the stockholders were free to convey the water right represented by their stock ownership separate from the land upon which the water was being used by them. Entering into the agreement to sell to the City a part of their water right did not change the nature or character of that part of their water right which they did not sell but reserved to themselves. The number of acres of land then owned by them was simply the measure of the water right which they reserved. Nothing in the agreement fastened the water right reserved to the land then owned by the stockholders who were parties to the agreement. The water right reserved continued to be a water right which could be separately conveyed from the land upon which the water was then being used.

■ It is next urged by the appellants that they are the owners of not one but two shares of stock in the Company and that they were therefore entitled to twice the amount of "free" water with which the City credited them. In computing the amount of "free" water to which the appellants were entitled the City relied upon the certification of the secretary of the Company that the appellants owned only one share. The Company has refused to transfer on its book the second share claimed by the appellants on the ground that said second share is not a "full share," but only a partial share and is not recognized by the Company's articles of incorporation. Whether the appellants are entitled to have the second share transferred to them on the books of the Company is an internal matter strictly between the Company and them. The Company is not a party to this suit and we cannot and do not determine that question here. No reason exists why the City should be drawn into that controversy. We think it was justified in relying upon the certification of the secretary of the Company in making the credit of "free" water.

■ Appellants contend that the lower court erred in allowing the City to compute the appellants' "free" water on a monthly basis instead of on an annual or semi-annual basis. For example, they claim that (1) if they consume 1000 gallons on a day in July (100 gallons more than is reserved by them) but used only 400 gallons on a day in December (100 gallons less than is reserved by them) the overage would be offset by the deficiency, or, at least, (2) any overage on a day between April 1st and October 1st should be offset by any deficiency on any day during the same period, regardless of whether the overage and deficiency occur in the same month during that period. The exchange agreement does not expressly provide any accounting period for determination of the credit for water reserved.

There might be merit to the appellants' contention were it not for the provision in the agreement that water used in excess of the water reserved should be paid for at "the regular Salt Lake City water rate charges at the time of use, subject, how-

ever, to the same rules and regulations as apply to residents of Salt Lake City at the time of use." An applicable ordinance of Salt Lake City provides:

> "Bills for water through meters shall be rendered monthly or quarterly; the superintendent of water works to determine from time to time when monthly or quarterly meter readings shall be made and bills rendered * * *."

If the appellants are to pay for the additional water used by them in accordance with the same rules and regulations which apply to residents of Salt Lake City, the City can bill them monthly. When the City chooses to bill monthly, as it has done in this case, it is necessary to determine monthly whether they have consumed more water than that quantity reserved by them.

As a final contention, the appellants claim that there is no privity between the City and them and that therefore they are not bound by the 1920 exchange agreement. They assert that as the owner of one share of stock in the Company they have the right to 1/2280th of the Big Cottonwood Creek water decreed to the Green Ditch in the Morse Decree free from any obligation to or ties with the City. We do not decide that question here since even if the appellants are correct, it constitutes no defense to this action against them. If they are not bound by the 1920 exchange agreement, they were not entitled to any "free" water from the City's water main and thus they are indebted to the City for water furnished and delivered to them in an amount greater than that claimed by the City in this action.

Appellants, after purchasing one share of stock, made application to the City for connection to its main. The City allowed the connection and informed them that they would be given certain "free" water. They knew that the City allowed the connection and furnished them the "free" water in exchange for the Big Cottonwood Creek water to which they were entitled by virtue of their stock ownership in the Company. The appellants have acquiesced in the exchange with the City. By their silence up until the time this action was brought they impliedly gave consent to the sale of their creek water right to the City on the terms contained in the exchange agreement. When the creek water to which the appellants' stock ownership entitled them was turned into the City's mains, title to such water vested in the City. The City was thereafter free to sell its water to whomever it pleased, including the stockholders from whom they had purchased it.

If the appellants now no longer desire to sell any of their right to the creek water decreed to the Green Ditch which is represented by their share of stock on the terms contained in the exchange agreement, but desire to make other disposition of that water, it will then be necessary to determine whether they are bound by the exchange agreement to sell to the City. But that question is not before us in this action.

The Judgment below is affirmed. Costs to the respondent.

McDONOUGH, CROCKETT, HENRIOD and WADE, JJ., concur.